# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 4, 2012

No. 11-30121

Lyle W. Cayce
Clerk

LOONEY RICKS KISS ARCHITECTS, INCORPORATED,

Plaintiff - Appellant, Cross - Appellee

v.

STATE FARM FIRE & CASUALTY COMPANY,

Intervenor Plaintiff - Appellee, Cross-Appellant

v.

STEVE BRYAN, et al.,

Defendants

_____

LAFAYETTE INSURANCE COMPANY,

Plaintiff - Appellee, Cross - Appellant

v.

LOONEY RICKS KISS ARCHITECTS, INCORPORATED,

Defendant - Appellant, Cross - Appellee

v.

STEVE H. BRYAN; BRYAN CONSTRUCTION COMPANY,
INCORPORATED; BRYAN COMPANY; CYPRESS LAKE DEVELOPMENT
LLC,

Defendants - Appellees

No. 11-30121

---

Appeals from the United States District Court
of the Western District of Louisiana

---

Before BENAVIDES, STEWART, and GRAVES, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Looney Ricks Kiss Architects ("LRK"), an architecture firm, brought this action for copyright infringement against a former client, Steve Bryan, and his affiliated building companies (collectively, "the Bryan defendants"). Lafayette Insurance Company ("Lafayette") and State Farm Fire and Casualty Company ("State Farm"), insurers of Bryan's Cypress Lake Development, sought declaratory judgments that, by virtue of exclusions set forth in their respective insurance policies, they have no obligation to provide coverage or duty to defend in LRK's suit. LRK appeals the district court's summary judgment ruling that Lafayette and State Farm have no duty to provide coverage, and Lafayette and State Farm appeal the district court's summary judgment ruling that they have a duty to defend. As we conclude that the exclusions relied upon by the insurers do not preclude coverage of LRK's copyright infringement claim, and, therefore, that the insurers owe both coverage and defense under their respective policies, we REVERSE in part and AFFIRM in part.

## I.

LRK is an architecture firm with its principal place of business in Memphis, Tennessee. In 1996, LRK created a design known as the Island Park Apartments, which was constructed by companies associated with Steve Bryan. On October 10, 1996, LRK and Island Park, LLC, as represented by Steve Bryan, entered into a Standard Form of Agreement Between Owner and Architect ("the

No. 11-30121

1996 Agreement").[1]  In pertinent part, Article 6.1 of the 1996 Agreement provided:

> The <u>Architectural Works</u>, Drawings, Specifications, <u>Technical Drawings</u> and other documents prepared by the Architect for this Project are instruments of the Architect's service for use solely with respect to this <u>Project and, unless otherwise provided, the Architect shall be deemed the author of these documents and shall retain all common law, statutory, and other reserved rights, including the copyright</u>. . . . The Architect's <u>Architectural Works</u>, Drawings, Specifications, <u>Technical Drawings</u> or other documents <u>shall not be used by the Owner or others on other projects, for additions to this Project or for completion of this Project by others</u>, unless the Architect is adjudged to be in default under this Agreement, except by agreement in writing and with appropriate compensation to the Architect.[2]

LRK registered the Island Park Apartments with the United States Copyright Office as an Architectural Work and Technical Drawings.

In 2001, Cypress Lake Development, a company associated with Bryan, applied for and obtained permits to construct the Cypress Lake Apartments in Baton Rouge, Louisiana.  LRK's complaint alleges that these apartments infringe on its copyrighted work without LRK's consent or permission.  The complaint further alleges that the Bryan defendants used depictions of its copyrighted works in promotional and advertising materials in the operation of the Cypress Lake Apartments.

From June 28, 2000, through June 28, 2001, the Cypress Lake real estate development was insured by a policy issued to the Bryan defendants by Lafayette.  Coverage B of the policy provided coverage for personal and advertising injury liability.  The policy states, in pertinent part: "'Personal and advertising injury' means injury, including consequential 'bodily injury', arising

---

[1] The form contract is copyrighted by the American Institute of Architects.  Several provisions of the form contract were stricken or underlined.

[2] Underlining in original.

out of one or more of the following offenses: . . . g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement'." The policy defines "advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." The policy further provides that the personal and advertising injury insurance does not apply to "'Personal and advertising injury': . . . (6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your 'advertisement[]' . . . ."

From June 28, 2002, through June 28, 2005, Cypress Lakes Apartments was insured by State Farm under three Apartment Policies. From September 6, 2002, through September 6, 2005, Cypress Lakes Apartments was insured by State Farm under three Umbrella Policies. Each of the policies provides coverage for personal and advertising injury. Advertising injury is defined as "injury arising out of one or more of the following offenses: . . . d. infringement of copyright, title or slogan . . . ." Each of the policies states that the insurance does not apply "to advertising injury arising out of: a. breach of contract other than misappropriation of advertising ideas under an implied contract . . . ."

On March 27, 2007, LRK initiated this action for copyright infringement against the Bryan defendants, their successors in interest, and an architect.[3] On July 27, 2007, State Farm intervened in the suit, seeking a determination that it owed no coverage for the damages sought by LRK against the Bryan defendants. In March 2009, Lafayette filed a separate action seeking a declaration that it owed no coverage and had no duty to defend in the lawsuit. On July 2, 2009, the two actions were consolidated, forming the present case.

---

[3] The architect, Stephen G. Hill, has settled and is no longer a party to the case. Cypress Lake Apartments was sold. Its current owners, though defendants in the case, are not insured under the policies at issue in this appeal and are not parties to this appeal.

No. 11-30121

On August 4, 2009, LRK moved for partial summary judgment against Lafayette, seeking a declaration that Lafayette owes a duty of defense to the Bryan defendants. On August 31, 2010, Lafayette also moved for summary judgment, seeking a declaration that it has no duty to defend in the lawsuit or to provide coverage. On September 14, 2010, State Farm moved for summary judgment, seeking a declaration that it owes no coverage and no duty to defend.

On December 30, 2010, the district court, in two separate rulings, concluded that both insurance companies owe their insureds a duty to defend in the lawsuit, but neither insurer has a duty to provide coverage pursuant to the operation of the "breach of contract" exclusions. LRK appealed the district court's determination that Lafayette and State Farm have no duty to provide coverage, and Lafayette and State Farm appealed the district court's determination that they have a duty to defend.

## II.

This court reviews a district court's grant of summary judgment de novo, applying the same standards as the trial court. *See Urbano v. Cont'l Airlines, Inc.*, 138 F.3d 204, 205 (5th Cir. 1998). Summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). "Even if we do not agree with the reasons given by the district court to support summary judgment, we may affirm the district court's ruling on any grounds supported by the record." *Lifecare Hosps., Inc. v. Health Plus, Inc.*, 418 F.3d 436, 439 (5th Cir. 2005).

No. 11-30121

## III.

## A.

The parties agree that Louisiana law governs the interpretation of the insurance policies at issue in this case. "An insurance policy is a contract between parties and should be construed according to contract principles." *Michelet v. Scheuring Sec. Servs. Inc.*, 680 So. 2d 140, 147 (La. App. 4 Cir. 1996). "When the language of a policy is clear and not ambiguous, the insurance contract must be enforced as written. When the wording is clear, the courts lack the authority to alter or change the terms of the policy under the guise of interpretation." *Id.* "In interpreting insurance contracts the judicial responsibility is to determine the parties' common intent. Such intent is to be determined according to the ordinary, plain and popular meaning of words used in a policy." *Id.* "Words in an insurance contract must be ascribed their generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning." *In re St. Louis Encephalitis Outbreak*, 939 So. 2d 563, 566 (La. App. 4 Cir. 2006).

"The parties are free to select the types of risks to be covered." *Michelet*, 680 So. 2d at 147. "A policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict the provisions beyond what the parties contemplated." *Id.* "Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume." *La. Ins. Guar. Assoc. v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994).

"Ambiguous or equivocal provisions which seek to narrow the insurer's obligations are construed against the insurer." *Michelet*, 680 So. 2d at 147. "The insurer has the burden of proving that a policy claimed loss falls within [an] exclusion." *Everett v. Philibert*, 13 So. 3d 616, 618 (La. App. 1 Cir. 2009).

6

No. 11-30121

## B.

In the present case, the insurers argue that the breach of contract exclusions of their respective policies preclude coverage of LRK's copyright infringement claim. The Louisiana Supreme Court has not addressed the issue of whether a "breach of contract" exclusion applies to preclude liability for a statutory tort which an insured had a contractual obligation not to commit. Accordingly, the panel must make an *Erie* guess. "When making an *Erie* guess, our task is to attempt to predict state law, not to create or modify it." *SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 442 (5th Cir. 2008) (internal quotation marks omitted).

Courts have applied two tests when deciding whether a "breach of contract" exclusion precludes coverage. Several courts have applied a "but for" test. In states embracing this test, "the injury is only considered to have arisen out of the contractual breach if the injury would not have occurred but for the breach of contract." *Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 202 (3d Cir. 2004); *see also Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608 (2d Cir. 2001); *Auto Owners Ins. Co. v. LA Oasis, Inc.*, No. 2:04-cv-174, 2005 WL 1313684 (N.D. Ind. May 26, 2005); *Aero Corp. v. Am. Int'l Specialty Lines Ins. Co.*, 676 F.Supp. 2d 738 (S.D. Ind. 2009).

In other states, which interpret the "arising out of" phrase of the "breach of contract" exclusion more broadly, courts apply an "incidental relationship" test, such that the exclusion applies to preclude coverage as long as the contract bears some relationship to the dispute. *See Callas Enters., Inc. v. Travelers Indem. Co.*, 193 F.3d 952 (8th Cir. 1999); *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453 (5th Cir. 2003).[4]

---

[4] Although *Sport Supply* articulated an "incidental relationship" test, it does not govern our resolution of the present case because it is legally and factually distinguishable. First, *Sport Supply* interpreted Texas law, rather than Louisiana law. Additionally, in *Sport Supply*, the underlying legal proceeding which was the subject of the coverage dispute specifically

7

No. 11-30121

In support of its assertion that Louisiana applies a "but for" test, LRK relies on Louisiana cases that have recognized an exception to the general applicability of "breach of contract" exclusions where the purportedly covered conduct is both tortious and a contractual breach. *See In re St. Louis*, 939 So. 2d 563; *Everett*, 13 So. 3d 616; *see also Dubin v. Dubin*, 641 So. 2d 1036 (La. App. 2 Cir. 1994). "It is well settled that the same acts or omissions may constitute breaches of both general duties and contractual duties and may give rise to both actions in tort and actions in contract." *In re St. Louis*, 939 So. 2d at 566. Where an injured party has "alleged a breach of duty owed to all persons which supports an action in tort . . . the breach of contract exclusion is inapplicable." *Id.* at 567. In order to overcome "the breach of contract" exclusion, the facts must demonstrate "that the[] negligence [or tort] claims are separate and distinct and not arising from the breach of contract claim." *Everett*, 13 So. 3d at 620. "Particularly, the tort claim must arise from a duty other than one imposed by the contract." *Id.*

These cases establish that the Louisiana courts will not apply the "breach of contract" exclusion to preclude an insurer's liability for a tort action, even though the same factual basis could support a claim for breach of contract. The reasoning of these cases makes clear that a claim for relief cannot be considered to have "arisen out of" a breach of contract where the legal support for the claim emanates from a source other than contract law. Therefore, we conclude that Louisiana would apply the "but for" test.

Our conclusion is bolstered by the established principle under Louisiana law that ambiguous policy exclusions are to be construed against the insurer. Accordingly, if there is a reasonable construction that would permit coverage,

---

challenged the alleged breach of the licensing agreement. Conversely, in the present case, LRK has brought an action against the Bryan defendants for copyright infringement, not breach of contract. Here, breach of contract is only implicated because the contract was in fact breached by the infringement.

that construction should be applied. The insurance policies at issue in this case do not define the "arising out of" language. Both the "but for" approach and the "incidental relationship" approach are reasonable constructions of the "breach of contract" exclusions. Thus, under Louisiana law, the construction most generous to coverage, the "but for" approach, should prevail.

As LRK's claim for relief under the federal copyright laws would exist even in the absence of its 1996 Agreement with Bryan, the "breach of contract" provisions of the relevant insurance policies do not apply to preclude coverage for LRK's claim. Accordingly, the district court's determination that the insurance policies at issue in this case preclude coverage must be reversed.

## IV.

Insurers have appealed the district court's ruling that they owe a duty to defend the Bryan defendants in this lawsuit. They argue that, because the district court determined that they owe no coverage, they have no corresponding duty to defend.[5]

"The duty to defend is broader than an insurer's liability for damage claims." *Allstate Ins. Co. v. Roy*, 653 So. 2d 1327, 1333 (La. App. 1 Cir. 1995). "The duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy." *Matheny v. Ludwig*, 742 So. 2d 1029, 1035 (La. App. 2 Cir. 1999). "Once a complaint states one claim within the policy's coverage, the insurer has a duty to accept defense of the entire lawsuit

---

[5] Lafayette also argues that LRK has no standing to seek a declaration that Lafayette owes a duty to defend its insureds. This contention is belied by our established precedent. In *Dairyland Insurance Co. v. Makover*, we held that injured parties named as defendants in a declaratory judgment action brought by an insurance company had standing to appeal the district court's judgment that the policy did not cover the putative insured. 654 F.2d 1120 (5th Cir. 1981). "It is decisive to our holding that Dairyland named the appellants as defendants in its declaratory judgment action." *Id.* at 1123. LRK has failed to articulate any reason why this precedent is inapplicable. Accordingly, as Lafayette named LRK as a defendant in its declaratory judgment action, our precedent is clear that LRK has standing to challenge Lafayette's claim that it owes no coverage to its insureds and has no duty to defend.

No. 11-30121

. . . ." *Treadway v. Vaughn*, 633 So. 2d 626, 628 (La. App. 1 Cir. 1993). Accordingly, because, as expressed above, we conclude that LRK's copyright infringement claim is covered by the insurance policies at issue in this case, the district court's determination that the insurers have a duty to defend in this lawsuit must be affirmed.

## V.

For the foregoing reasons, we REVERSE the district court's summary judgment in favor of the insurers with respect to coverage and AFFIRM the district court's summary judgment recognizing the insurers' duty to defend. We REMAND this case to the district court for further proceedings consistent with this opinion.